IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VERNELL WICKWARE, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHNS MANVILLE, ) <br> ) <br> Defendant. ) | Case No. CIV-13-424-D |

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 31], filed pursuant to Fed. R. Civ. P. 56. Plaintiff has timely opposed the Motion, which is fully briefed and at issue.

Plaintiff is a current employee of Defendant who suffered an on-the-job injury to his knee that required surgical treatment in 2010, and resulted in permanent work restrictions. He brings suit under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq*. (collectively, the "ADA"), to recover damages for alleged discrimination and retaliation. The Complaint alleges that Defendant failed to select Plaintiff for an available position in 2011 based on his disability, failed to provide a reasonable accommodation and demoted him to a lower-paid position in 2012 because of his disability, and subjected him to retaliatory discipline after he filed an EEOC charge of discrimination.

Defendant seeks a judgment as a matter of law on all claims asserted in the Complaint. In Plaintiff's response, he concedes that any claim related to his non-selection for a position

in 2011 is procedurally barred due to his failure to file a timely EEOC charge. *See* Pl.'s Resp. Br. [Doc. No. 40] at 17, n.2.[1] Thus, the only claims presented for decision are a claim of discrimination based on Defendant's alleged failure to accommodate Plaintiff's disability resulting in a demotion, and a retaliation claim.

## Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144

---

[1] Plaintiff also states that he has decided to abandon a "regarded as disabled" claim asserted in the Complaint, which simply alleged that Defendant treated Plaintiff as being more severely disabled than he actually was. *See* Pl.'s Resp. Br. [Doc. No. 40] at 22, n.3.

F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Undisputed Facts [2]

Defendant operates a manufacturing plant in Oklahoma City that makes commercial roofing materials. During the relevant time period, Defendant had written personnel policies regarding ADA compliance, equal employment opportunity, and anti-retaliation. The plant had a human resources manager from 2010 through late 2012 named Jim Shantz.

In February, 2011, John Dodi became manager of the Oklahoma City plant. At that time, the plant was utilizing a pay program entitled OKC Plant Pay for Skills Plan 2010, which was a system for determining how covered employees would be paid. Mr. Dodi began making changes to this program that were intended to make it easier to administer and more

---

[2] This statement includes material facts presented by both parties that are supported as required by Fed. R. Civ. P. 56(c)(1) or otherwise shown by the record. If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded. All facts are stated in the light most favorable to Plaintiff.

like a program used at other facilities. Under the amended program, an employee's pay would be based on the number of positions that the employee could perform.

As relevant to the claims in this case, Plaintiff has a physical disability related to the condition of his knees that restricts his ability to work and to perform activities such as walking. When Mr. Dodi became plant manager, Plaintiff had been working in a light duty assignment as a forklift operator and relief supervisor. His work restrictions on file stated that he could drive a forklift but that he was limited to medium work (lifting up to 50 pounds occasionally) and only occasional squatting, kneeling, crawling or climbing. In May, 2011, Mr. Dodi presented, and Plaintiff signed, a restricted duty compliance agreement by which Plaintiff agreed not to exceed these work restrictions.

In July, 2011, the Oklahoma City plant officially began the new 2011 Pay for Skills Program. Management evaluated each employee subject to the program to see where each would be placed. The program provided for a transition period for employees who needed additional time to learn the skills needed to qualify and perform the number of positions that would enable them to retain the same level of pay they had earned under the prior program. The design, timing, and application of the 2011 Pay for Skills Program was a business decision focused on determining the pay rates of covered employees based on their number of skill positions and providing similar compensation to employees at different facilities. The decision was unrelated to Plaintiff or his employment situation.

The 2011 Pay for Skills Program required a relief foreman to be "[q]ualified in all lower operator levels." *See* Def.'s Mot. Summ. J., Ex. 12 [Doc. No. 31-12] at 3 (ECF

4

numbering).  In the context in which it appears, the phrase "lower operator levels" appears to refer to five pay levels for operators (the highest of which required an ability to perform all five production operator positions – mat tender, coater, forklift, winder, and robot) and two relief operator positions (denominated as back end relief and front end relief).  The parties disagree about the meaning of the requirement that a relief foreman be qualified in all lower operator levels.  Defendant's position is that a relief foreman needed to be capable of performing all operator positions.

At Mr. Dodi's request, Plaintiff completed a self-evaluation in late July, 2011, in which Plaintiff assessed his ability to meet the job standards of all operator positions and identified particular standards for which an accommodation would be needed.[3] Mr. Dodi met with Plaintiff in August, 2011, to discuss the evaluation and to clarify particular comments that Plaintiff had made regarding his limitations.  A memo summarizing the discussion at the meeting was prepared, and signed by Mr. Dodi and Plaintiff on September 6, 2011.  During this time period, Plaintiff held the title of relief foreman.

Defendant subsequently hired a professional engineer, Dennis Seal, Ph.D., to conduct an ergonomic assessment of the jobs that Plaintiff was qualified to perform, including all five operator positions and the relief operator positions.  On September 23, 2011, Dr. Seal visited the plant and observed employees performing the job tasks of each position in order to assess

---

[3] Plaintiff questions why Mr. Dodi asked him to perform this evaluation because Plaintiff had been evaluated at each position when he returned to work from his injury in early 2011.  Mr. Dodi has testified that the evaluation was not part of the 2011 Pay for Skills Program but was intended to help determine Plaintiff's work restrictions and what job accommodations were needed.

the physical requirements and ergonomic criteria. Plaintiff was not present during the visit, and Dr. Seal never met with Plaintiff. Dr. Seal prepared a report dated October 31, 2011, that contained a chart comparing the job task requirements he determined, the medical restrictions on file for Plaintiff, and Plaintiff's self-reported restrictions. Dr. Seal stated a conclusion that he "found all required functions to be within safe working limits with respect to weight and force, repetitions, squatting, kneeling or crawling while performing the expected job functions." *See* Def.'s Mot. Summ. J., Ex. 21 [Doc. No. 31-21] at 2.

Mr. Dodi read the report to mean that Plaintiff was able to perform all job tasks without violating his restrictions. When Mr. Dodi met with Plaintiff to share the ergonomic assessment, Plaintiff disagreed with certain aspects of Dr. Seal's report and with Mr. Dodi's position that Plaintiff could safely do all job tasks.[4] Based on Plaintiff's insistence that he could not do certain tasks, Defendant placed Plaintiff on paid leave while he obtained updated medical information.

On January 18, 2012, Plaintiff presented a handwritten note from his physician, Dr. Limbaugh, stating that Plaintiff was unable to squat repetitively, lift greater than 20 pounds, or stand for prolonged periods.[5] Mr. Dodi stated that he did not understand these restrictions and needed more information. Plaintiff disagreed that additional information was

---

[4] In his summary judgment brief, Plaintiff notes that certain physical limitations, such as squatting or lifting more than 50 pounds, are noted in Dr. Seals' report as required in certain positions but discounted as "occasional" or "infrequent."

[5] On January 20, 2012, a physician completed a "Request for Medical Information for Reasonable Accommodation" form supplied by Mr. Shantz, indicating that Plaintiff could not do all the essential functions of the job as outlined in the job description because of limitations on squatting and lifting. *See* Def.'s Mot. Summ. J., Ex. 23 [Doc. No. 31-23]. It is unclear what job or jobs were under consideration.

needed, but he obtained another physician's evaluation. On January 25, 2012, Dr. Gannaway completed a form provided by Defendant entitled "Work Capabilities," on which he checked "never" for climbing ladders and squatting; "occasional" for standing, walking, lifting up to 50 pounds, pushing/pulling up to 50 pounds, and climbing stairs; and "frequent" for sitting and operating motorized vehicles. *See* Def.'s Mot. Summ. J., Ex. 24 [Doc. No. 31-24]. Dr. Gannaway also noted as additional requirements that Plaintiff needed to avoid pivoting, loading, twisting, and pushing and twisting.

On January 31, 2012, Plaintiff met with Mr. Shantz. They reviewed the job tasks of each position and updated Plaintiff's self-evaluation as summarized in the memo of his August 25, 2011 meeting with Mr. Dodi. Mr. Shantz's update to the prior memo stated for each position either "No changes" or "Above is still accurate," but included Plaintiff's comments regarding particular tasks. *See* Def.'s Mot. Summ. J., Ex. 25 [Doc. No. 31-25]. Mr. Dodi, Mr. Shantz and Plaintiff met on February 13, 2012, and Plaintiff was informed that he would be paid as a level one operator because he could only perform the job duties of a forklift operator. Plaintiff disagreed and suggested job changes that would permit him to do other operator positions and, specifically, the duties of a coater operator. The meeting adjourned until the following day, when Plaintiff was informed that he would be classified as a level two operator due to his ability to perform the forklift and coater jobs. During this process, Mr. Dodi and Mr. Shantz did not attempt to identify the essential functions of the other operator positions, but focused on the tasks that were identified as problematic.

Unlike the operator positions, there was no job description for the position of relief foreman that contained a list of job tasks and standards. Defendant instead relies on the 2011 Pay for Skills Program and the affidavit of Mr. Dodi. In addition to stating that a relief foreman must be qualified in all operator levels, the 2011 Pay for Skills Program stated that a relief foreman was responsible for overall operations when the foreman was not present and assisted the foreman with "cycle counts, production paperwork and scheduling." *See* Def.'s Mot. Summ. J., Ex. 12 [Doc. No. 31-12] at 3. Mr. Dodi states that to qualify for the position of relief foreman under the 2011 Pay for Skills Program, "an employee must be qualified and able to perform all production operator positions." *See* Dodi Aff. [Doc. No. 31-2], ¶ 16. Mr. Dodi describes the job of a relief foreman as follows:

> The Relief Foreman is a working lead position. In general, the Relief Foreman works in one of the operator positions and also performs the duties of the Foreman when the Foreman is not present. The Relief Foreman's value is in a great part due to his or her ability to be skilled and able to work in all of the positions.

*Id.* ¶ 17.

Plaintiff testified that it had not been Defendant's practice to require a relief foreman to be able to perform all operator positions and that other employees served as relief foreman even though they were not qualified to perform all operator positions. One person identified by Plaintiff, Scott Henderson, was employed as a foreman in 2011. The position of foreman did not require an ability to perform all operator positions. Plaintiff also presents statements of Mr. Henderson and a coworker, Monte Jeffries, that an employee named Richard Lyons worked in the position of relief foreman and they do not believe he was qualified to perform

8

the job of a coater operator.[6] Mr. Dodi states that "Richard Lyons was qualified on all operator positions when he was classified as a Relief Foreman under the 2011 Pay for Skills Program." *Id*. ¶ 22.

On May 22, 2012, Plaintiff filed an EEOC charge alleging that Defendant engaged in disability discrimination on February 24, 2012, when it demoted Plaintiff from relief supervisor to forklift operator.[7] Shortly after filing the EEOC charge, Plaintiff complained to Mr. Shantz on June 14, 2012, that he was being subjected to retaliatory harassment by Mr. Dodi. Plaintiff retained an attorney before the EEOC process was complete, at least by November 9, 2012. On January 17, 2013, Plaintiff informed the EEOC investigator during a telephone call that he wanted to amend the charge to include a retaliation claim. The investigator advised Plaintiff that he needed to provide a statement or affidavit regarding the claim within 10 days. On January 31, 2013, the EEOC investigator recommended dismissal of the charge because he found no reasonable cause to believe an ADA violation had occurred and Plaintiff had failed to provide any additional evidence as of that date. The

---

[6] The statement of another person employed as a foreman, Chris Islas, is disregarded because he would not be permitted to testify at trial. Plaintiff did not timely identify Mr. Islas as a potential witness, and has not asked to amend his final witness list to add Mr. Islas. Also, Mr. Jeffries' statement that he "know[s]" Mr. Henderson was not qualified to be a coater operator is disregarded because Mr. Jeffries does not state any fact that would establish his personal knowledge of or competence to testify about Mr. Lyons' qualifications. *See* Pl.'s Resp. Br., Ex. 6 [Doc. No. 40-6], ¶ 3. An affidavit used to oppose a summary judgment motion "must be made on personal knowledge" and show the affiant "is competent to testify on the matters stated." *See* Fed. R. Civ. P. 56(c)(4).

[7] Defendant states the EEOC charge was filed on May 20, 2012. Its exhibit shows that Plaintiff signed the document on that date, but it was received by the EEOC's Oklahoma City area office on May 22, 2012. *See* Def.'s Mot. Summ. J., Ex. 33 [Doc. No. 31-33]. As pertinent here, "the charge is deemed to be filed with the Commission upon receipt of the document." *See* 29 C.F.R. § 1601.13(a)(4)(ii)(A).

EEOC issued a dismissal notice regarding the discrimination charge on January 31, 2013. On that same date, Plaintiff faxed to the EEOC office an amended charge that included both discrimination and retaliation claims. The record shows no action by the EEOC regarding the document. Plaintiff filed suit within 90 days after receiving the EEOC's dismissal notice.

## Discussion

### A.     ADA Retaliation Claim

"Exhaustion of administrative remedies under the Americans with Disabilities Act . . . is a jurisdictional prerequisite to suit in the Tenth Circuit." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir. 2002). In this case, Plaintiff claims he was subjected to retaliation for asserting a claim of disability discrimination in that he received harsher discipline than other employees after he filed an EEOC charge. Plaintiff did not, however, file an administrative complaint alleging retaliation, unless the amended charge received by the EEOC on the same day it dismissed his original charge is sufficient.[8] Thus, a preliminary question regarding Plaintiff's retaliation claim is whether the Court has jurisdiction to consider it.[9]

"[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show,

---

[8] Under current law, "federal courts lack jurisdiction over incidents occurring after the filing of an EEOC claim unless the plaintiff files a new EEOC claim or otherwise amends her original EEOC claim to add the new incidents." *Eisenhour v. Weber County*, 744 F.3d 1220, 1227 (10th Cir. 2014).

[9] The Court is obliged to address jurisdiction as a threshold matter, before reaching the merits of a plaintiff's claim. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998).

by competent evidence, that [he] did exhaust." *McBride*, 281 F.3d at 1106. Plaintiff has responded to Defendant's Motion on the issue of exhaustion by making the following factual statements in his brief without any citation to the record: "Wickware amended his charge prior to the Notice of Rights being issued. The EEOC would not have filed the Amended Charge had a Notice of Rights already been issued." *See* Pl.'s Resp. Br. [Doc. No. 40] at 16. Plaintiff also argues in his brief that the EEOC's premature issuance of a right-to-sue notice within the 180-day period for investigation does not preclude the filing of suit. *See id*. at 28 (citing *Hall v. FlightSafety Int'l, Inc*., 106 F. Supp. 2d 1171, 1182 (D. Kan. 2000)); *see also Walker v. United Parcel Serv., Inc*., 240 F.3d 1268, 1274 (10th Cir. 2001). Because the 180-day period following Plaintiff's original charge had expired when the EEOC issued its dismissal notice, this argument assumes that Plaintiff filed an amended charge before the dismissal.[10]

Plaintiff provides no factual support for his bare assertion that the amended charge containing his new retaliation claim was filed before the EEOC issued its dismissal notice. Plaintiff instead appears to assume that the amended charge was timely because it bears a "RECEIVED" stamp dated the same day as the dismissal notice. *See* Def.'s Mot. Summ. J., Ex. 42 [Doc. No. 31-42]. However, Plaintiff has not disputed the stated fact, supported by

---

[10] This argument also assumes that a new 180-day period would begin to run upon an amendment. Federal regulations provide that an amended charge "alleging additional acts . . . related to or growing out of the subject matter of the original charge will relate back to the date the [original] charge was first received." *See* 29 C.F.R. § 1601.12(b). Courts have held, however, that an amendment that advances a new theory of recovery is not "related to" the original claim and does not relate back. *See Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs*., 165 F.3d 1321, 1327 (10th Cir. 1999) (retaliation charge added by amendment did not relate back to original discrimination charge), *abrogated on other grounds by Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003).

the exhibit, that the amended charge was faxed to the EEOC's local area office. A facsimile transmission is not an acceptable means of filing a charge. *See* 29 C.F.R. § 1601.8 ("A charge may be made in person or by mail at any office of the Commission or with any designated representative of the Commission."). Plaintiff provides no authority for his implicit contention that the amended EEOC charge was properly filed by fax.

Further, Plaintiff's position that the amended charge was timely filed before the dismissal is inconsistent with the record showing that the EEOC took no action after receiving it. The EEOC did not provide notice of the amended charge to Defendant, as required by law. *See* 29 C.F.R. § 1601.14(a). The EEOC could not have fulfilled its duty to investigate an amended charge (*see id*. § 1601.15(a)) or issued a dismissal on the grounds stated in the notice sent to Plaintiff, that is, that the EEOC had made a determination regarding the merits of his claim "[b]ased upon its investigation." *See* Def.'s Mot. Summ. J., Ex. 41 [Doc. No. 31-41]. In short, Plaintiff has presented no facts from which to conclude that he filed an administrative complaint regarding his retaliation claim.

For these reasons, the Court finds that it lacks subject matter jurisdiction to decide the merits of Plaintiff's ADA claim of retaliation. Because the Court lacks jurisdiction, the Court will order the dismissal of Plaintiff's retaliation claim. *See Shikles v. Sprint/United Management* Co., 426 F.3d 1304, 1318 (10th Cir. 2005) (court should dismiss for lack of jurisdiction rather than enter summary judgment on an unexhausted claim).

**B.     ADA Discrimination Claim**

The ADA prohibits employment discrimination on the basis of disability against a qualified employee, that is, "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that [he] holds or desires." *Id*. § 12111(8). By definition, an employer discriminates on the basis of disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." *Id*. § 12112(b)(5)(A).

Defendant contends Plaintiff cannot succeed on a claim that it failed to accommodate his disability or demoted him based on his disability because he cannot establish that he was qualified to perform the essential functions of the position of relief foreman. Defendant asserts that Plaintiff cannot show there was a reasonable accommodation that would have permitted him to perform the essential functions of the position. Defendant also contends Plaintiff cannot show that he was demoted to an operator position based on his disability because he cannot establish that Defendant's legitimate, nondiscriminatory reasons for its decision were a pretext for discrimination.

To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must demonstrate that he (1) is "a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and 3) suffered discrimination by an employer . . . because of that disability." *See*

*EEOC v. Picture People, Inc.*, 684 F.3d 981, 985 (10th Cir. 2012); *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011). Defendant does not dispute for summary judgment purposes that Plaintiff was an individual with a disability as defined by 42 U.S.C. § 12102(2).

**Qualified for the Position of Relief Foreman**

Plaintiff contends he can satisfy this element of his claim because an ability to perform all operator positions was not an essential function of the relief foreman position and, alternatively, he was able to perform all operator jobs with reasonable accommodation.

**1.      Essential Functions**

"The plaintiff bears the burden of showing [he] is able to perform the essential functions of [his] job." *Mason v. Avaya Commc'n, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004). The ADA does not define the concept of "essential functions" but mandates that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of essential functions of the job." *See* 42 U.S.C. § 12111(8). An implementing regulation contains a general definition: "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." *See* 29 C.F.R. § 1630.2(n)(1). The regulation also identifies appropriate evidence to be considered:

> (3) Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;
(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii) The amount of time spent on the job performing the function;
(iv) The consequences of not requiring the incumbent to perform the function;
(v) The terms of a collective bargaining agreement;
(vi) The work experience of past incumbents in the job; and/or
(vii) The current work experience of incumbents in similar jobs.

*Id*. § 1630.2(n)(3).

"Determining whether a particular function is essential is a factual inquiry." *Davidson v. Am. Online, Inc*., 337 F.3d 1179, 1191 (10th Cir. 2003). "The question of whether a job requirement is a necessary requisite to employment [in a position] initially focuses on whether an employer actually requires all employees in the particular position to satisfy the alleged job-related requirement." *Id*.; *see Hennagir v. Utah Dep't of Corr*., 587 F.3d 1255, 1262 (10th Cir. 2009). "Provided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it." *Picture People, Inc*., 684 F.3d at 986 (quoting *Hennagir*, 587 F.3d at 1262) (internal quotations omitted).[11]

Upon consideration of the facts and evidence presented, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact bearing on the issue of whether

---

[11] Although the parties approach the issue of whether Plaintiff was a qualified individual in terms of his ability to perform an "essential function" of the position of relief foreman, the Court notes that the issue could also be analyzed in terms of whether Plaintiff met a necessary job-related requirement of the position under the 2011 Pay for Skills Program. *See* 29 C.F.R. § 1630.2(m) ("The term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position.").

an ability to perform all operator positions was an "essential function" of the position of relief foreman. First, what Defendant's practice might have been before adopting the 2011 Pay for Skills Program is irrelevant. "The ADA does not limit an employer's ability to establish or change the content, nature, or functions of a job." *Hennagir*, 587 F.3d at 1262 (internal quotation omitted). Second, the written document outlining the program and the plant manager's testimony make clear that a job requirement of the position of relief foreman was that the employee be qualified in all operator levels, and a level five position required "qualification on and operation of all five operator positions." *See* Def.'s Mot. Summ. J., Ex. 12 [Doc. No. 31-12] at 3. Mr. Dodi explains why Defendant deemed this requirement necessary under the 2011 Pay for Skills Program: "a great part" of the value of a relief foreman was "his or her ability to be skilled and able to work in all of the positions." *See* Dodi Aff., ¶ 17.

Plaintiff's attempt to show that Defendant did not uniformly enforce this requirement of the 2011 Pay for Skills Program is ineffectual. Plaintiff argues that "the only other Relief Foreman, Mr. Richard Lyons, was not qualified or capable of performing all of the operator positions."[12] Plaintiff's only factual support for his argument is affidavit testimony of a foreman, Mr. Henderson, and a coworker, Mr. Jeffries, that they do not believe Mr. Lyons

---

[12] Plaintiff also points out that the position of relief foreman has remained vacant for several months and that the requirement does not apply to the position of foreman. These facts do not show that Defendant has inconsistently applied the requirements of the relief foreman position. Instead, Plaintiff's argument is that these facts show that Defendant's requirement for the relief foreman position "makes little sense." *See* Pl.'s Resp. Br. [Doc. No. 40] at 20. However, "the essential function inquiry is not intended to second guess the employer or to require the employer to lower company standards." *Mason*, 357 F.3d at 1119 (internal quotation omitted).

was qualified to perform the job of a coater operator. Mr. Henderson's stated basis for this belief is that Mr. Lyons "did not know how to run that machine." *See* Henderson Aff. [Doc. No. 40-4], ¶ 6. Mr. Henderson provides no temporal or factual context for this conclusion.[13] Mr. Jeffries provides no factual basis for his belief that Mr. Lyons was not qualified to work as a coater operator. Thus, the Court finds that Plaintiff has failed to present proposed testimony that would be admissible at trial. *See*, *e.g.*, *Zokari v. Gates*, 561 F.3d 1076, 1089 (10th Cir. 2009) (coworker's testimony was properly excluded where the witness did not provide sufficient information to establish his personal knowledge of relevant matters). The Court further finds that the personal beliefs of these witnesses are insufficient to counter the affidavit testimony of Mr. Dodi, based on his personal knowledge and his review of company records as Defendant's records custodian (*see* Dodi Aff. [Doc. No. 31-2], ¶ 1), that Mr. Lyons was qualified in all operator positions when he was classified as a relief foreman under the 2011 Pay for Skills Program.

For these reasons, the Court finds that Plaintiff has failed to come forward with sufficient facts or evidence to show that he met Defendant's requirement to be classified as a relief foreman under the 2011 Pay for Skills Program.

---

[13] Mr. Henderson states that he began work as a foreman in 2011 and worked in quality control and maintenance before resigning in 2014. Concerning Mr. Lyons, Mr. Henderson states only that "I am aware that Richard Lyons was a Relief Supervisor, and I do not believe that he was qualified as a Coater Operator because he did not know how to run that machine." *See* Henderson Aff. [Doc. No. 40-4], ¶ 6.

### 2. Reasonable Accommodation

Turning to Plaintiff's second means of demonstrating he was qualified for the position of relief foreman, the question is whether Plaintiff has presented sufficient facts to establish he was able to perform the essential functions of all operator jobs with reasonable accommodation.

On this issue, Plaintiff simply argues, in a conclusory fashion, that he could have performed the essential functions of these jobs if Defendant had provided reasonable accommodations. Plaintiff's factual support for this argument is his testimony that he had worked in all of the operator jobs (with accommodation) since his return to work from his knee injury, and his 2011 self-evaluation purporting to show "there were only a few, minor things that [Plaintiff] needed help with among the pages of duties set out in the job description." *See* Pl.'s Resp. Br. [Doc. No. 40] at 21. This argument necessarily assumes there was no change in Plaintiff's work restrictions between the time of his return to work and self-evaluation in 2011 and the time of Defendant's classification decision in 2012.

The record does not support this assumption. Plaintiff's 2012 medical restrictions (no squatting or climbing ladders; occasional standing, walking, lifting up to 50 pounds, pushing/pulling up to 50 pounds, and climbing stairs; avoid pivoting, loading, twisting, or pushing and twisting) are significantly different from his 2011 medical restrictions (occasionally lifting up to 50 pounds, squatting, kneeling, crawling or climbing). More importantly, Plaintiff overlooks the 2012 update to the 2011 self-evaluation, which purports to reflect no change in Plaintiff's capabilities but reflects greater concerns. The 2012 update,

for example, stated regarding the operator position of mat attendant that "[m]ost of this job is outside his current restrictions." *See* Def.'s Mot. Summ. J., Ex. 25 [Doc. No. 31-25] at 2.

Plaintiff also contends Dr. Seal's report shows that the tasks identified by Plaintiff as requiring assistance were not essential functions of the operator jobs because they "were only occasionally done." *See* Pl.'s Resp. Br. [Doc. No. 40] at 21. However, a job function may be "essential" even though it is done infrequently. *See*, *e.g.*, *Hennagir*, 587 F.3d at 1263 (training certification was essential for corrections department employees with direct inmate contact, even though medical personnel had never been required to employ that training). Further, Dr. Seals' report compares the job task requirements of the operator positions with Plaintiff's 2011 restrictions, not his 2012 restrictions.

Finally, Plaintiff bears the initial burden to identify an accommodation that "appears reasonable on its face" and that would have enabled him to perform the essential functions of the operator jobs. *See Mason*, 357 F.3d at 1122; *see also Hennagir*, 587 F.3d at 1264 & 1265 n.3 (limiting review to the accommodations proposed by the plaintiff). The only accommodation identified in Plaintiff's argument is Defendant's assignment of other employees, such as persons working in relief operator positions, to perform certain tasks or assigning infrequent tasks to a group of employees. However, the purpose of an accommodation is to enable an employee to perform the desired job; "'an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of the job.'" *See Hennagir*, 587 F.3d at 1264 (quoting *Mathews v. Denver Post*, 263 F.3d 1164, 1168-69 (10th Cir. 2001)). "[I]t is unreasonable to expect Employer to reallocate

19

specific job duties . . . in order to accommodate" an employee who is unable to perform those duties. *Picture People, Inc.*, 684 F.3d at 991. Thus, reassigning tasks that Plaintiff could not do by himself or eliminating an assigned task from a position is not a facially reasonable accommodation.

Plaintiff has failed to satisfy his obligation under Rule 56 to set forth specific facts that show a genuine issue for trial on the question of whether he was qualified with reasonable accommodation to satisfy the job requirements of a relief foreman in 2012. Therefore, because Plaintiff lacks sufficient evidence to establish an essential element of an ADA claim of discrimination, Defendant is entitled to summary judgment on this claim.

**Conclusion**

For these reasons, Defendant is entitled to a judgment as a matter of law on Plaintiff's discrimination claims and to dismissal of his retaliation claim for lack of subject matter jurisdiction.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 31] is GRANTED. Judgment will be entered accordingly.

IT IS SO ORDERED this 7th day of November, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE